IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| R. M., b/n/f | § | |
| ROBERICK & KIMBERLY MOSLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-03503-N-BT |
| | § | |
| DESOTO INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is Defendant DeSoto Independent School District's (DISD's) Motion to Dismiss Plaintiff's Original Petition for lack of subject-matter jurisdiction and for failure to state a claim. Mot. (ECF No. 5). As explained in these Findings, Conclusions, and Recommendation, the Court should DISMISS this action because Plaintiff has abandoned his claims. Alternatively, the Court should GRANT DISD's motion and DISMISS this action because it lacks jurisdiction over Plaintiff's claims.

I.

Plaintiff Ryan M. is a former DISD student who has been diagnosed with an autism spectrum disorder and a speech impairment disorder. Pl.'s Original Pet. 7 ¶ 13 (ECF No. 1-8). Plaintiff's parents, Roberick and Kimberly, proceeding *pro se*,

1

filed this lawsuit against DISD in state district court on October 30, 2020.[1] The Original Petition avers that DISD discriminated against Plaintiff and harassed him because of his disability, in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. And it further asserts state-law claims against DISD, including negligence, gross negligence, and intentional infliction of emotional distress (IIED). *Id.* at 13-19 ¶¶ 40-55.

Plaintiff alleges that on November 30, 2018, when he was enrolled as a pre-K student at DISD's Amber Terrace Discovery and Design Early Childhood Academy, he "sustained a severe head injury" that resulted in "profuse[]" bleeding and required him to be "rushed to the emergency room at Children's Hospital." *Id.* at 7 ¶ 15. Plaintiff is non-verbal, *id.* at 9 ¶ 22; therefore, his parents asked to review

---

[1] Following removal and review of DISD's motion to dismiss, the Court advised Roberick and Kimberly that—unless they were licensed attorneys—they could not represent Plaintiff in federal court. Order 2 (ECF No. 8). Specifically, the Court explained: "[w]hile 'individual[s] may proceed *pro se* in civil actions in federal court, . . . those not licensed to practice law may not represent the legal interests of others.' Even parents proceeding *pro se* may not assert claims on behalf of their minor children." *Id.* (internal quotations and citations omitted); *see Sprague v. Dep't of Fam. & Protective Servs.*, 547 F. App'x 507, 507-08 (5th Cir. 2013) (per curiam) ("[N]on-attorney parents generally may not litigate the claims of their minor children in federal court." (quoting *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005))); *see also Morgan v. Texas,* 251 F. App'x. 894, 896 n.2 (5th Cir. 2007) (per curiam) (citations omitted) (noting that because the plaintiff was proceeding *pro se,* she did not have the authority to assert claims on behalf of minor child); *Aduddle v. Body,* 277 F. App'x. 459, 461-62 (5th Cir. 2008) (per curiam) (citation omitted) (holding that even assuming a grandfather was a legal guardian of a grandchild, because he was not an attorney, he did not have the authority to represent her on a *pro se* basis). The Court directed Plaintiff's parents to obtain legal representation before filing a response to the motion to dismiss. Thereafter, on January 5, 2021, Kim T. Cole entered an appearance as Plaintiff's attorney (ECF No. 9).

video of the incident that caused the injury. *Id.* at 7 ¶ 15; *see id.* at 38, Pl.'s Ex. E. Despite their "timely [and] appropriate request," DISD officials allegedly refused to let Plaintiff's parents review the video. *Id.* at 7 ¶ 15.

The next year Plaintiff enrolled in kindergarten at DISD's Frank D. Moates Elementary School. *Id.* ¶ 16. Plaintiff alleges that, in September and October 2019, DISD teachers reported "the children in the special education classroom" at Moates were being verbally and physically abused. *Id.* at 8 ¶¶ 17-18. Plaintiff's parents, in turn, relayed these reports to DISD officials, including the school principal and the superintendent, and to police. *Id.* ¶¶ 17-19. Plaintiff's parents also "requested video footage and that the students be protected." *Id.* ¶ 17. Plaintiff ultimately withdrew from DISD and, on November 1, 2019, enrolled in another school district "in order to provide a safer, nurturing learning environment." *Id.* ¶ 19.

At the end of the school year, on June 1, 2020, Plaintiff filed a charge with the Office of Civil Rights alleging DISD discriminated against him based on his disability and denied him a free and appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA). *Id.* at 6 ¶ 11. Then, on August 31, 2020, Plaintiff requested a due process hearing with the Texas Education Agency (TEA). *Id.* ¶ 12. Plaintiff alleges the TEA Special Education Hearing Officer (SEHO) "ruled that claims relating to discrimination were dismissed for lack of jurisdiction." *Id.*; *see id.* at 25-27, Pl.'s Ex. B. For its part, DISD contends the SEHO dismissed with prejudice the request for a due process

3

hearing after the parties reached a settlement. Def. Br. 8 (ECF No. 6); Def.'s App. 3 (ECF No. 7).

Plaintiff served DISD with the Original Petition on November 9, 2020, and DISD timely removed the case to federal court because several of Plaintiff's claims arise under federal law. Notice of Removal (ECF No. 1). DISD then filed the pending motion to dismiss. DISD argues Plaintiff's state-law tort claims fail because he cannot establish a waiver of DISD's governmental immunity. Def.'s Br. 9-10. DISD further argues that Plaintiff's ADA and Rehabilitation Act claims are based on the provision of a FAPE, but Plaintiff did not exhaust these claims. *Id.* at 10-16. Therefore, his federal claims must be dismissed for lack of jurisdiction. To the extent Plaintiff's federal claims are not based on the provision of a FAPE, DISD argues Plaintiff failed to allege sufficient facts to state a claim for relief. *Id.* at 16-19.

Plaintiff did not file a substantive response to DISD's motion. Therefore, he should be deemed to have abandoned his claims. Alternatively, the Court should grant DISD's motion to dismiss because it lacks jurisdiction.

## II.

The Court should dismiss this action because Plaintiff has abandoned his claims.

Plaintiff, through his attorney, submitted a response (ECF No. 12) to DISD's motion on February 2, 2021—but almost all of it was written in an indecipherable font. Except for the first page, the last page, and some footers, Plaintiff's 33-page

response appears to be written in Wingdings font, as depicted in the following excerpt:

Pl.'s Resp. 2.

The Court ordered Plaintiff to promptly refile his response in a legible font (ECF No. 13), but Plaintiff failed to comply. Accordingly, on February 8, 2020, the Court struck the illegible response (ECF No. 14).

Plaintiff did not offer the Court any excuse or explanation for the illegible response; nor did Plaintiff object to the order striking his response. Plaintiff did not seek an extension of time to file a legible response. And Plaintiff did not seek leave to amend his claims to address any of DISD's arguments for dismissal.

Indeed, Plaintiff has failed to file anything in this case or otherwise attempt to contact the Court in over six months. Plaintiff has thus wholly aborted pursuit of his claims by not responding to DISD's motion to dismiss and should be deemed to have abandoned his claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (explaining that plaintiff's "failure to pursue [her] claim beyond her complaint constituted abandonment"); *see also Scales v. Slater*, 181 F.3d 703, 708 n. 5 (5th Cir. 1999) (reasoning that the plaintiff abandoned her claim by failing to contest defendant's arguments for dismissal); *Ensley v. DeSoto Indep. Sch. Dist.*, 2020 WL 2542602, at *2 (N.D. Tex. May 18, 2020) (noting that a plaintiff's failure to defend her claim resulted in abandonment); *Hernandez v. City of Grand Prairie Tex.*, 2017 WL 4098596, at *13 (N.D. Tex. Sept. 15, 2017) ("When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss . . . , the claim is deemed abandoned."). Dismissal is appropriate under the circumstances.

III.

Alternatively, the Court should grant DISD's motion and dismiss this action because it lacks jurisdiction over Plaintiff's claims.

A.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction

6

conferred by statute, lack the power to adjudicate claims." A*ngela B. v. Dallas Indep. Sch. Dist.*, 2020 WL 2101228, at *3 (N.D. Tex. May 1, 2020) (Fitzwater, J.) (citing *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Alexander v. United States*, 2021 WL 1670834, at *1 (N.D. Tex. Apr. 9, 2021) (Rutherford, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). If subject-matter jurisdiction is lacking, the court must dismiss the suit. *See Stockman*, 138 F.3d at 151.

A party can challenge subject-matter jurisdiction by making a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A party can make a factual attack on subject-matter jurisdiction by submitting evidence, such as affidavits or testimony. *See id.*; *see also IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). If the movant provides evidence factually attacking subject-matter jurisdiction, the nonmovant must submit and show by a preponderance of the evidence that the court has jurisdiction. *See Paterson*, 644 F.2d at 523.

### B.

Plaintiff asserts claims for negligence and gross negligence; negligent hiring, retention, and supervision; vicarious liability for assault and respondeat superior;

and IIED. DISD argues the Court should dismiss these state-law tort claims because it is entitled to governmental immunity.

Governmental immunity exists to protect the state's "political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). Accordingly, "'no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent.'" *Id.* (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)).

The Texas Tort Claims Act "generally waives governmental immunity to the extent that liability arises from the 'use of a motor-driven vehicle or motor-driven equipment' or from 'a condition or use of tangible personal or real property.'" *Id.* at 655-56 (citing Tex. Civ. Prac. & Rem. Code § 101.021). But "[f]or school districts, the Act's waiver is even narrower, encompassing only tort claims involving the use or operation of motor vehicles." *Id.* at 656 (citing Tex. Civ. Prac. & Rem. Code § 101.051); *Hill v. Fort Bend Indep. Sch. Dist.*, 275 F.3d 42 (5th Cir. 2001) ("Although the Texas Tort Claims Act waives sovereign immunity under certain circumstances, the waiver of immunity for school districts is limited to claims arising from accidents involving the use of motor-driven vehicles.").

Here, Plaintiff's tort claims are premised on DISD's alleged failure to provide a safe school environment. Because these claims do not arise out of conduct involving the use or operation of a motor vehicle, DISD is immune from suit. And "governmental immunity from suit defeats a trial court's jurisdiction[.]" *Morgan*

*v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013); *see also Catlett v. Duncanville Indep. Sch. Dist.*, 2010 WL 3467325, at *3 (N.D. Tex. Sept. 2, 2010) (explaining "[s]overeign immunity divests a court of subject matter jurisdiction in a suit against the state unless the state consents" and "[g]overnmental immunity acts like sovereign immunity to provide similar protection from suit for state agencies, such as school districts"). Accordingly, the Court should dismiss Plaintiff's state-law tort claims for lack of subject-matter jurisdiction.

## C.

Plaintiff also asserts claims under Title II of the ADA and Section 504 of the Rehabilitation Act. DISD argues these federal claims are premised on the denial of a FAPE and should be dismissed because Plaintiff failed to exhaust his administrative remedies under the IDEA.

i.   Plaintiff's ADA and Rehabilitation Act claims are subject to the IDEA's administrative exhaustion requirement.

The IDEA provides "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(B)(6)(A). In Texas, a party making such a complaint is entitled to a due process hearing conducted by the TEA. *See* 20 U.S.C. § 1415(f)(1)(A); 19 TEX. ADMIN. CODE § 89.1151(b). A party "aggrieved by the findings" of the TEA may bring an action in state or federal court "with respect to the complaint presented pursuant to this section." 20 U.S.C. § 1415(i)(2)(A). The IDEA further provides the

IDEA's "procedures . . . *shall be exhausted* to the same extent as would be required" as if the claim were brought under the IDEA itself "*before the filing* of a civil action under" the Constitution, the ADA, the Rehabilitation Act, or other federal laws. 20 U.S.C. § 1415(l) (emphasis added). Hence, "a plaintiff may invoke any federal law to support a disabled student's claim for an adequate education; the plaintiff just must first exhaust under the IDEA process." *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019); *accord Heston v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 980-81 (5th Cir. 2020). In other words, "[t]he exhaustion requirement is not limited to claims brought under the IDEA." *Angela B.*, 2020 WL 2101228, at *4 (citing *Hooker v. Dall. Indep. Sch. Dist.*, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.)); *accord Heston*, 816 F. App'x at 980-81.

A plaintiff's non-IDEA claims are subject to IDEA exhaustion when "the plaintiff seeks to remedy the deprivation of the [FAPE] that the IDEA guarantees." *McMillen*, 939 F.3d at 645 (citing *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 750 (2017)); *M.V. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *6 (S.D. Tex. Sept. 24, 2018) (quoting *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017)) ("The Supreme Court has held that the IDEA exhaustion requirements apply with equal force to non-IDEA claims if the plaintiff uses them to 'seek relief for the denial of a [free and appropriate public education].'"). The court looks to the substance or the "gravamen" of the petition to determine whether the non-IDEA claims seek to remedy the denial of a FAPE. *Id.*

Certain "clue[s]" help the court make this determination. *Fry*, 137 S. Ct. at 756. For example, the "history of the proceedings," such as a plaintiff "previously invok[ing] the IDEA's formal procedures to handle the dispute," is "strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the [petition] never explicitly uses that term." *Id*. at 757; *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 2020 WL 6867184, at *3 (5th Cir. Nov. 23, 2020) (stating that the plaintiff's "resort to the IDEA's administrative procedures before filing suit is *a strong indicator* that the gravamen of his [petition] is in the denial of a FAPE even if the [petition] makes no specific mention of a FAPE or the IDEA" (emphasis added)); *McMillen*, 939 F.3d at 646 (5th Cir. 2019) (noting that a plaintiff's previous invocation of the IDEA indicates claims are premised on the denial of a FAPE). Likewise, a plaintiff's use of "IDEA lingo" throughout the petition provides another indication that the gravamen of a suit is the denial of a FAPE, thereby bringing the exhaustion requirement into play. *McMillen*, 939 F.3d at 645.

When it is unclear whether the petition "concerns the denial of a FAPE, or instead addresses disability-based discrimination," another "clue" may come from the answers to two hypothetical questions: (1) whether "the plaintiff [could] have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library;" and (2) whether "an adult at the school—say, an employee or visitor—[could] have pressed essentially the same grievance." *Fry*, 137 S. Ct. at 756. "When the answer to those questions

is yes, a [petition] that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject." *Id.* In other words, a complaint that "a school did not adopt a plan individualized to the student's needs sound[s] in the IDEA" because "the IDEA achieves its goal of ensuring a FAPE by providing instruction and related services to the child's unique needs." *Angela B.*, 2020 WL 2101228, at *4 (internal quotations omitted) (quoting *McMillen*, 939 F.3d at 645).

The IDEA's administrative exhaustion is necessary for claims under the Rehabilitation Act and the ADA when the plaintiff complains about student safety and deficiencies of educators and aides provided by a school district's special education program. *See Heston*, 816 F. App'x at 983. For example, in *Heston*, a special education aide threw a trash bin at a student with autism and other disabilities. *Id.* at 979. During the IDEA's administrative remedial process, the Hestons settled their claims with the school district for a denial of a FAPE. Then, the Hestons filed a discrimination suit under the Rehabilitation Act and the ADA in federal district court. The district court dismissed the claims because the Hestons failed to exhaust their administrative remedies. The district court held that the Hestons' Rehabilitation Act and ADA claims were rooted in the denial of a FAPE, or FAPE-based. On appeal, the Hestons argued that their discrimination claims were not FAPE-based and therefore not subject to administrative exhaustion under the IDEA. The Fifth Circuit disagreed. Within their Rehabilitation Act and ADA claims, the Hestons complained that the special education staff was "inadequately experienced, trained, and supervised" and that

12

the student was denied a "safe and non-hostile *educational* environment," which created a "known and inherent[ly] dangerous situation." *Id.* at 981 (emphasis in original). The Fifth Circuit noted that "while the Hestons spotlight [the aide's] conduct that eventually led to physical injury, their disability and constitutional claims all stem from a failure to train and supervise educational staff" and the aide's "adequacy as an educational aide." *Id.* at 982. And as such, the Fifth Circuit held that administrative "[e]xhaustion was necessary." *Id.* at 983.

Plaintiff's claims here are analogous to the plaintiffs' claims in *Heston*. Like in *Heston*, Plaintiff previously sought administrative relief under the IDEA and settled with the school district for the denial of a FAPE. Like in *Heston*, Plaintiff complained about the educators' inadequate experience, training, and supervision that led to alleged knowingly unsafe *educational* environment. While Plaintiff spotlights DISD's conduct that led to Ryan M.'s pre-K physical injury and allegedly foreseeable future kindergarten injuries, Plaintiff's disability and constitutional claims all stem from DISD's alleged failure to train and supervise its special education staff. Thus like the *Heston* court held, Plaintiff's claims under the Rehabilitation Act and the ADA are FAPE-based and require administrative exhaustion under the IDEA.

Furthermore, Plaintiff fails the two-hypothetical-question test as to whether his claims are FAPE-based. Plaintiff's claims were unique to the school setting, and an adult at the school would not be afforded the same government protections and relief sought. For example, Plaintiff pursued the IDEA's administrative remedies

through the Office of Civil Rights and the TEA by requesting a due process hearing for FAPE deprivation claims. Pl.'s Original Pet. 6 ¶¶ 11-12, at 25-27, Pl.'s Ex. B; Def.'s Br. 8. Moreover, in his Petition, Plaintiff uses the IDEA lingo when asserting that he met all "conditions precedent to filing this action for disability discrimination . . . . and exhausted all administrative remedies under the [IDEA]." Pl.'s Original Pet. 12 ¶ 38. Plaintiff's claims only could apply to the educational setting as they refer to kindergarten, the special needs classroom, school administrators, protected video footage in schools, special education, special education students, and a need for a nurturing learning environment. *Id.* at 7-13 ¶¶ 15-19, 22-24, 26, 30-31, 33-34, 37-38. Plaintiff's claims are inapplicable to an adult at the school because the allegations relate to DISD's provision of educational services (or lack thereof) to Plaintiff. *Id.* Therefore, under the two-question test, Plaintiff's claims are FAPE-based and require administrative exhaustion under the IDEA because the claims are applicable only to a student in a school setting.

      ii.     <u>Plaintiff failed to exhaust the IDEA's administrative remedies</u>.

Plaintiff settled his FAPE claims against DISD before his IDEA administrative due process hearing. Def.'s App. 3 ("A settlement was reached by the parties and unanimously approved by [DISD's] Board of Trustees on October

26, 2020.").[2] Plaintiff then requested dismissal of his administrative action. *See id.* The SEHO granted this request: "Because all matters in controversy have been resolved between the parties and [Plaintiff] no longer wishes to pursue the request for a due process hearing, it is ORDERED the [Plaintiff's] Motion for Dismissal With Prejudice is hereby GRANTED[.]" *Id.* Plaintiff never received an adverse administrative ruling on his FAPE claims and therefore did not exhaust his administrative remedies under the IDEA.

Plaintiff alleges that the SEHO "ruled that claims relating to discrimination were dismissed for lack of jurisdiction." Pl.'s Original Pet. ¶ 12. But this falls short of satisfying the exhaustion requirement. Plaintiff first must exhaust his administrative remedies under the IDEA for deprivation of a FAPE before pursuing FAPE-based claims in court. *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) ("Exhaustion requires more than pleading a claim . . . it requires 'findings and decision' by the administrative body."); *see Angela B.*, 2020 WL 2101228, at *8 (citing *Wood v. Katy Indep. Sch. Dist.*, 2009 WL 2485967, at *3-4 (S.D. Tex. Aug. 6, 2009) (rejecting the argument that "since the hearing officer dismissed [plaintiffs'] 'non-IDEA claims,' they were unable to exhaust their administrative remedies concerning those issues," and dismissing non-IDEA claims that were not exhausted)) (also citing *Washington v. Katy Indep. Sch. Dist.*,

---

[2] The Court can consider this evidence under Rule 12(b)(1) in the context of DISD's factual challenge to the Court's subject-matter jurisdiction. *See Paterson*, 644 F.2d at 523.

390 F. Supp.3d 822, 836-37 (S.D. Tex. 2019) (acknowledging the hearing officer dismissed non-IDEA claims for want of jurisdiction and holding those claims that overlapped with the IDEA were nevertheless subject to the exhaustion requirement)). Plaintiff has failed to show by a preponderance of the evidence he exhausted his administrative remedies. And Plaintiff never argued that administrative exhaustion was excused so the Court does not consider it. Accordingly, the Court should dismiss Plaintiff's claims under the Rehabilitation Act and the ADA for lack of subject-matter jurisdiction.

Because Plaintiff does not argue his claims are not premised on the provision of a FAPE, the Court pretermits consideration of DISD's other arguments for dismissal, including its arguments under Rule 12(b)(6).

## Recommendation

For the reasons stated, the District Court should DISMISS this action without prejudice because Plaintiff has abandoned his claims. Alternatively, the Court should GRANT Defendant DeSoto Independent School District's motion to dismiss (ECF No. 5) and DISMISS Plaintiff's claims under Rule 12(b)(1) for lack of subject-matter jurisdiction.

**SO RECOMMENDED**.

August 17, 2021.

                                                    _____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

17